

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-18-00471-CR

**EX PARTE** Winston **CASINELLI**

From the 227th Judicial District Court, Bexar County, Texas
Trial Court No. 2018W0420
Honorable Mark R. Luitjen, Judge Presiding

Opinion by:  Patricia O. Alvarez, Justice

Sitting:  Sandee Bryan Marion, Chief Justice
Patricia O. Alvarez, Justice
Irene Rios, Justice

Delivered and Filed: May 15, 2019

AFFIRMED

This appeal stems from the trial court's denial of Appellant Winston Casinelli's pretrial writ of habeas corpus challenging the State's one-count indictment alleging possession of delta-9-tetrahydrocannabinol, a Penalty Group 2 controlled substance, alleged to have occurred on August 14, 2017. Because we conclude Casinelli failed to show his entitlement to the writ, as a matter of law, we affirm the trial court's denial of Casinelli's petition for writ of habeas corpus.

### FACTUAL AND PROCEDURAL BACKGROUND

Casinelli was arrested and charged with one count of possession of a controlled substance in Penalty Group 2, less than one gram alleged to have occurred on August 14, 2017. *See* TEXAS HEALTH & SAFETY CODE ANN. § 481.116(b).

On July 9, 2018, Casinelli filed his pretrial petition for writ of habeas corpus asserting the indictment was fundamentally defective because, pursuant to section 481.103(d) of the Texas Health and Safety Code, the substance was approved by the Food and Drug Administration (FDA), and the indictment therefore failed to state an offense. *See id*. § 481.103(d), *repealed by* Act of June 1, 2017, 85th Leg., R.S., ch. 384, § 1. The trial court conducted a hearing on the pleading, with the attached documents, and denied Casinelli's writ of habeas corpus and this appeal ensued.

We turn first to whether these claims are cognizable in a pretrial writ of habeas corpus.

## COGNIZABLE CLAIMS

"The writ of habeas corpus is an extraordinary writ. Neither a trial court nor an appellate court should entertain an application for writ of habeas corpus when there is an adequate remedy by appeal." *Ex parte Weise*, 55 S.W.3d 617, 619 (Tex. Crim. App. 2001) (internal citations omitted); *accord Ex parte Schoolcraft*, 107 S.W.3d 674, 676 (Tex. App.—San Antonio 2003, no pet.). "Thus, a defendant must establish his entitlement to habeas corpus relief." *Schoolcraft*, 107 S.W.3d at 676.

Generally, "a claim is cognizable in a pretrial writ of habeas corpus if, resolved in the defendant's favor, it would deprive the trial court of the power to proceed and result in the appellant's immediate release." *Ex parte Smith*, 185 S.W.3d 887, 892 (Tex. Crim. App. 2006). Pretrial habeas proceedings, followed by an interlocutory appeal, provide an extraordinary remedy, and courts must ensure that a pretrial writ is not misused to procure a premature and inappropriate pretrial appellate review of matters. *See Ex parte Ellis*, 309 S.W.3d 71, 79 (Tex. Crim. App. 2010); *Ex parte Doster*, 303 S.W.3d 720, 724 (Tex. Crim. App. 2010).

"A defendant may use a pretrial writ of habeas corpus only in very limited circumstances." *Ex parte Paxton*, 493 S.W.3d 292, 297 (Tex. App.—Dallas 2016, pet. ref'd) (citing *Smith v. State*, 178 S.W.3d 797, 801 (Tex. Crim. App. 2005)). The defendant may: (1) "challenge the State's

power to restrain him at all;" "the manner of his pretrial restraint, i.e., the denial of bail or conditions attached to bail;" and (3) "certain issues which, if meritorious, would bar prosecution or conviction." *Smith*, 178 S.W.3d at 180.

Here, the question before this court is whether the alleged error in the indictment raised by section 481.103(d) is the type of fundamental error that fails to allege an offense and robs the trial court of jurisdiction and is therefore properly brought as a writ of habeas corpus or whether it is the type of allegation whose resolution will be aided by development of the record at trial. *See Dishman v. State*, No. 03-14-00114-CR, 2014 WL 4414824, at *2 (Tex. App.—Austin Aug. 27, 2014, no pet) (mem. op., not designated for publication). Because this is not a question of failure of proof, but a question of whether the statute allows for the prosecution of the offense, we conclude Casinelli's alleged error is the type of fundamental error that may be properly raised by writ of habeas corpus.

We thus turn to whether the trial court erred in denying Casinelli's petition for writ of habeas corpus.

### ALLEGED ERROR IN THE INDICTMENT

#### A. Arguments of the Parties

Casinelli contends the trial court committed reversible error by denying his pretrial writ of habeas corpus because the statute, at the time of Casinelli's offense, decriminalized possession of the substance with which he was charged. The State counters that while subsection 481.103(d) excepted certain forms of FDA approved tetrahydrocannabinol (or THC) from Penalty Group 2, it did not except THC completely.

#### B. Standard of Review

An appellate court reviews a trial court's decision to grant or deny an application for writ of habeas corpus under an abuse-of-discretion standard. *Ex parte Perez*, 525 S.W.3d 325, 333

(Tex. App.—Houston [14th Dist.] 2017, no pet.): *see also Ex parte Garcia*, 353 S.W.3d 785, 787 (Tex. Crim. App. 2011). We defer to the trial court's assessment of the facts, viewing such facts "in the light most favorable to the trial court's ruling." *See Ex parte Perusquia*, 336 S.W.3d 270, 274–75 (Tex. App.—San Antonio 2010, pet. ref'd) (citing *Ex parte Wheeler*, 203 S.W.3d 317, 324 (Tex. Crim. App. 2006)). When the resolution of the ultimate issue turns on an application of purely legal standards, our review is de novo. *See Ex parte De La Cruz*, 466 S.W.3d 855, 866 (Tex. Crim. App. 2015); *Ex parte Lovings*, 480 S.W.3d 106, 110 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (conducting de novo review of statutory construction issue in appeal from denial of application for writ of habeas corpus). "Statutory construction is a question of law." *Harris v. State*, 359 S.W.3d 625, 629 (Tex. Crim. App. 2011); *accord Lovings*, 480 S.W.3d at 110. "Reviewing courts must also grant deference to implicit fact findings that support the trial court's ultimate ruling." *Perusquia*, 336 S.W.3d at 275.

## C. Statutory Construction

"If there is no valid statute under which [Casinelli] can be charged, he is entitled to be discharged." *Ex parte Psaroudis*, 508 S.W.2d 390, 391 (Tex. Crim. App. 1974); *see also Crisp v. State*, 643 S.W.2d 487, 491 (concluding the Legislature's failure to change caption on H.B. 730, in light of the drastic changes in the law, "could not possibly put anyone on notice."). *But see Ex parte Maddox*, 683 S.W.2d 93, 95 (Tex. App.—Austin, *pet. ref'd*, 685 S.W.2d 53 (Tex. Crim. App. 1985) ("The general rule is this: when there is a valid penal statute under which a prosecution may be brought, habeas corpus is not available to test the sufficiency of the charging instrument prior to trial."); *Ex parte Muniz*, 655 S.W.2d 224, 225 (Tex. App.—Houston [14th Dist.], *aff'd*, 692 S.W.2d 101 (Tex. Crim. App. 1985) (explaining when an indictment is obtained pursuant to a valid law, the prosecution may be maintained and habeas may not be used to test the sufficiency). When a writ alleges an indictment "fail[s] to allege an offense" it is the type of fundamental defect that

"fails to vest the trial court with jurisdiction." *Dishman*, 2014 WL 4414824, at *2 (explaining question of venue improper for habeas because "resolution of claim [will] be aided by the development of a record at trial" and the State has burden of proof at trial).

An appellate court starts with the statute's text; we read words and phrases in context and construe them according to rules of grammar and usage. *See* TEX. GOV'T CODE ANN. § 311.011(a) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage."); *see also Harris v. State*, 359 S.W.3d 625, 629 (Tex. Crim. App. 2011). We are further directed to focus on the statute's "literal text" and "attempt to discern the fair, objective meaning of the text" from the drafter's perspective. *Mahaffey v. State*, 364 S.W.3d 908, 913 (Tex. Crim. App. 2012) (quoting *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991)). We "presume every word in a statute has been used for a purpose, and each word, phrase, clause, and sentence should be given effect if reasonably possible." *Harris*, 359 S.W.3d at 629 (citing *State v. Hardy*, 963 S.W.2d 516, 520 (Tex. Crim. App. 1997)).

"Under the canons of statutory construction, we are to construe a statute according to its plain language, unless the language is ambiguous or the interpretation would lead to absurd results that the legislature could not have intended." *Uyamadu v. State*, 359 S.W.3d 753, 758–59 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). While an ambiguous statute "may be understood by reasonably well-informed persons to have two or more different senses," an unambiguous statute "permits no more than one understanding." *Mahaffey*, 364 S.W.3d at 913.

## D.    Texas Health and Safety Code at the Time of the Offense

If "the statute is clear and unambiguous, the Legislature must be understood to mean what it has expressed, and it is not for the courts to add or subtract from the statute." *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991); *see also Uyamadu*, 359 S.W.3d at 758.

*1.      Section 481.116(a)*

The State's indictment charged Casinelli pursuant to the Texas Health and Safety Code section 481.116, as follows:

> on or about the 14th Day of August, 2017, WINSTON CASINELLI did intentionally and knowingly possess a controlled substance, namely: DELTA-9-TETRAHYDROCANNABINOL, which by aggregate weight, including any adulterants and dilutants, was of an amount less than One (1) gram . . .

*See* TEX. HEALTH & SAFETY CODE ANN. § 481.116(a) ("[A] person commits an offense if the person knowingly or intentionally possesses a controlled substance listed in Penalty Group 2, unless the person obtained the substance directly from or under a valid prescription or order of a practitioner acting in the course of professional practice."). Casinelli contends the substance with which he was charged was Marinol and the active ingredient in Marinol is Dronabinol—a substance listed in Section 481.103(d) as approved by the FDA. *See id.* § 408.103(d).

*2.      Section 408.103: Penalty Group 2*

At the time of Casinelli's arrest, section 481.103(d) provided as follows:

> If a substance listed in this section is approved by the Federal Drug Administration, the inclusion of that substance in this penalty group does not apply, and notwithstanding any other law, a person may not be convicted for the manufacture or delivery of the substance under Section 481.113 or for possession of the substance under Section 481.116.

*Id*.

The following substance was listed under section 481.103(a)(1):

> Dronabinol (synthetic) in sesame oil and encapsulated in a soft gelatin capsule in a U.S. Food and Drug Administration approved drug product (some trade or other names for Dronabinol: (a6aR-trans)-6a,7,8,10a-tetrahydro-6,6, 9-trimethyl-3-pentyl-6H-dibenzo [b,d]pyran-1-ol or (-)-*delta-9-(trans)-tetrahydrocannabinol*);

*Id*. § 408.103(a)(1) (emphasis added).

**E.     Analysis**

Much of Casinelli's argument that the offense he was charged with is FDA approved is without authority or support. The language cited for the indictment within his petition for writ of habeas corpus is not the language used by the State in the indictment against Casinelli.[1] The petition appears to presume the substance with which Casinelli was charged was Marinol; however, there is nothing in the record to substantiate this claim. Casinelli contends that the active ingredient in Marinol is Dronabinol and Dronabinol is synthetic THC, a naturally occurring component of cannivis sativa L. He further claims that because Marinol is a substance approved by the FDA, a person could not be convicted of possession of THC, under the section of 481.103(d) effective at the time of Casinelli's offense.

The two post-conviction habeas cases on which Casinelli relies support the proposition that an individual cannot be prosecuted for possessing a substance approved by the FDA. *See Ex parte Gonzalez*, 500 S.W.3d 409, 409–10 (Tex. Crim. App. 2016); *Ex Parte Velasquez*, WR-85,613-01, 2016 WL 5118426, at *1 (Tex. Crim. App. Sept. 21, 2016). That proposition is not in question in this case. Similarly, the multiple Adderall cases which Casinelli cites do not assist this court in determining whether the substance with which Casinelli was charged with possessing was a punishable offense at the time of his arrest.

---

[1] The indictment read as follows:

> on or about the 14th Day of August, 2017, WINSTON CASINELLI did intentionally and knowingly possess a controlled substance, namely: DELTA-9-TETRAHYDROCANNABINOL, which by aggregate weight, including any adulterants and dilutants, was of an amount less than One (1) gram;

The petition for writ of habeas corpus alleged the indictment read, in relevant part:

> did then and there intentionally or knowingly possess a controlled substance, namely TTHC (Delta-9 tetrahydrocannabinol) other than marihuana of less than one gram, including any adulterants or dilutants;

To prevail on his writ of habeas, Casinelli bore the burden to show that at the time of his alleged offense, possession of less than one gram of delta-9-tetrahydrocannabinol was not a punishable offense under the Health and Safety Code. *See Psaroudis*, 508 S.W.2d at 391 (explaining applicant entitled to discharge if no valid statute under which he was charged). More specifically, Casinelli bore the burden to show, as a matter of law, that delta-9-tetrahydrocannabinol, the substance Casinelli was charged with possessing, and possession of delta-9-(trans)-tetrahydrocannabinol (Dronabinol or Marinol)—the synthetic form of delta-9-tetrahydrocannabinol, the substance approved by the FDA at the time of Casinelli's offense, are the same substance. *See Schoolcraft*, 107 S.W.3d at 676.

Viewing the record in the light most favorable to the trial court's ruling, *see Perusquia*, 336 S.W.3d at 275, we cannot conclude, as a matter of law, that the delta-9-tetrahydrocannabinol with which Casinelli was charged, was an FDA approved substance pursuant to section 481.103(d) at the time of Casinelli's offense, *see* TEX. HEALTH & SAFETY CODE ANN. § 481.103(a)(1). *See also Ex parte Ingram*, 533 S.W.3d 887, 906 (Tex. Crim. App. 2017) (citing *State v. Holcombe*, 187 S.W.3d 496, 499 (Tex. Crim. App. 2006)) (Alcala, J., concurring) ("A penal statute must define the criminal offense with adequate definiteness so that ordinary people can understand what conduct is prohibited and in a manner that does not permit arbitrary and discriminatory enforcement."); *Harris*, 359 S.W.3d at 629 (presuming each word, phrase, clause, and sentence in statute has been used for a purpose).

Accordingly, we affirm the trial court's denial of Casinelli's application for writ of habeas corpus.

Patricia O. Alvarez, Justice

DO NOT PUBLISH